IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN KAY BUCKLEY,** | : | Civil No. 1:19-cv-794-SHR |
| **Plaintiff,** | : | |
| v. | : | |
| **UNIVERSAL SEWING SUPPLY, INC.,** | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is the motion to dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to transfer based on 28 U.S.C. § 1404(a) (Doc. 9), filed by Defendant Universal Sewing Supply, Inc. ("Defendant" or "Universal"). Having considered the motion, Plaintiff's response (Doc. 11), and Defendant's reply (Doc. 13), the court will deny the motion without prejudice, granting Plaintiff leave to conduct limited jurisdictional discovery.

## **I.** **Background**

This is a copyright infringement dispute. For the purposes of this memorandum, the court shall construe all facts in favor of Plaintiff and view the documentary evidence and declaration[1] submitted in the light most favorable to her.

---

[1] While the written statement by Plaintiff is labeled an "affidavit," it is not notarized and thus does not constitute an affidavit. *Furnier v. M&T Veneer Corp.*, No. 1:10-cv-0222, 2010 WL 2835563, at *1 n.2 (M.D. Pa. July 16, 2010) ("The unsworn declaration of Theresa Duty is not an affidavit. An affidavit is taken before a person having authority to administer an oath or affirmation.") (internal quotations and ellipses omitted); *accord* BLACK'S LAW DICTIONARY 70

1

Plaintiff Karen Kay Buckley ("Plaintiff") is a quilt designer who designed multiple different types of quilting scissors. In December of 2016, Plaintiff began negotiating, by email and phone, a distributor deal with Universal, whereby it would purchase and re-sell Plaintiff's scissors under certain limitations, including a restriction on selling scissors through websites such as Amazon. On March 30, 2017, Defendant issued a purchase order requesting 7,920 pairs of scissors for a price of $64,407.60. In response, Plaintiff accepted the purchase order and shipped the requested products from Pennsylvania to Missouri on April 11, 2017. On August 24, 2017, Universal issued an additional purchase order that Plaintiff again filled by shipping the scissors from Pennsylvania. Universal paid for these purchases by mailing checks to Plaintiff at her Pennsylvania address.

At some point in 2017, Plaintiff began receiving complaints from other distributors of a competitor selling her scissors on Amazon for cheaper prices. Plaintiff came to believe Universal was the party doing so. Thus, in response to Defendant's next purchase order, Plaintiff informed Defendant she would no longer

---

(11th ed. 2019) (defining an affidavit as a "voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths"). Nonetheless, Plaintiff issues her statement "pursuant to 28 U.S.C. § 1746," and "declare[s] under penalty of perjury that the foregoing is true and correct." (Doc. 12-1, ¶¶ 1, 27.) It thus constitutes a valid declaration under § 1746 and can be relied upon by the court in "any matter" requiring an evidentiary basis. 28 U.S.C. § 1746(2).

sell to them due to their breaching of the agreement by selling through Amazon. Defendant never responded.

According to the complaint, Defendant then began selling a set of copycat scissors with virtually identical packaging and design, encroaching on Plaintiff's intellectual property rights. On May 9, 2019, Plaintiff thus brought suit against Defendant for copyright infringement and Lanham Act violations, alleging trade dress infringement and unfair competition. (*See generally*, Doc. 1.)

On July 9, 2019, Defendant moved to dismiss the case for lack of personal jurisdiction and improper venue; or, alternatively, to transfer the case to the Eastern District of Missouri. (*See generally*, Docs. 9-10.) On July 23, 2019, Plaintiff filed a response. (Docs. 11-12.) And on August 5, 2019, Defendant filed a reply with eight new exhibits. (Doc. 13.) This motion is thus ripe for review.

## II. **Standard of review**

In reviewing a 12(b)(2) motion to dismiss for lack of jurisdiction, the court must take as true the facts alleged by the plaintiff. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). At that point, "the plaintiffs need only establish a prima facie case of personal jurisdiction." *Id.* (internal quotations and brackets omitted). "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity

3

sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

"When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint." 4A Charles Alan Wright & Arthur R. Miller, *Procedural Aspects of Personal Jurisdiction*, Fed. Prac. & Proc. § 1067.6 (4th ed. 2019) ("Wright & Miller"). Instead, the plaintiff must carry its burden by presenting admissible evidence. *Estate of Thompson v. Phillips*, 741 F. App'x 94, 96 (3d Cir. 2018). The court may evaluate the motion on the papers and documentary evidence alone, in which case the plaintiff "need only establish a prima facie case of personal jurisdiction and they are entitled to have . . . all factual disputes drawn in their favor." *Id.* (internal quotations and brackets omitted); *Metcalfe*, 566 F.3d at 331 (reversing district court for failing to construe disputed facts in the plaintiff's favor). The plaintiff carries this "prima facie" burden if its evidence makes its personal jurisdiction theory "seem[] to be true on first examination, even though it may later be proved to be untrue." BLACK'S LAW DICTIONARY 1441 (11th ed. 2019). But the plaintiff ultimately bears the burden of proving "by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Thus, "[i]f the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may

4

defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *accord Metcalfe*, 566 F.3d at 336 (explaining the personal jurisdiction process similarly). The choice of how the court resolves a factual dispute is ultimately a "discretionary" one. Wright & Miller, *supra*, at § 1067.6.

Courts in the Third Circuit "ordinarily allow" limited jurisdictional discovery, as long as the plaintiff's personal jurisdiction claim "is not clearly frivolous." *Metcalfe*, 566 F.3d at 336; *accord Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 n.20 (3d Cir. 2018) (jurisdictional discovery must be limited). "Furthermore, we have found jurisdictional discovery particularly appropriate where the defendant is a corporation." *Metcalfe*, 566 F.3d at 336. Having laid out the process for evaluating a motion to dismiss under Rule 12(b)(2), the court now turns to the substance of personal jurisdiction.[2]

"A District Court typically exercises personal jurisdiction according to the law of the state where it sits, in this case Pennsylvania." *Cruickshank-Wallace v. CNA Fin. Corp.*, 769 F. App'x 77, 79 (3d Cir. 2019) (citing FED. R. CIV. P. 4(k)(1)(A)). Pennsylvania's long-arm statute establishes a scope of personal jurisdiction coextensive with constitutional boundaries. *See id.* at 79 (citing 42 Pa. Cons. Stat.

---

[2] The parties agree that "issues of personal jurisdiction and venue" here "are essentially identical." (Doc. 10, p. 12; *accord* Doc. 12, pp. 23-24.) For the purpose of resolving this motion, the court will thus analyze the two together.

Ann. § 5322(b)). The court will thus confine its analysis to the constitutional requirements. The due process clause of the United States Constitution permits the exercise of two types of personal jurisdiction: specific and general. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "For a corporation, general jurisdiction is the state(s) where the corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.'" *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 463 (M.D. Pa. 2019) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)) (internal brackets omitted). "[A] court with general jurisdiction may hear *any* claim against that defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of Ca., S.F. Cty.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original).

The Third Circuit has laid out a three-part test for determining whether the court has specific jurisdiction: "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal citations, quotations, and brackets omitted). While a majority opinion of the United States Supreme Court has never resolved whether the stream-of-commerce theory of personal jurisdiction is valid, the Third Circuit has rejected it. *See Shuker*, 885 F.3d at 780 (citing *J.*

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011); *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 108-13 (1987)). Thus, in the Third Circuit, a vendor indirectly "inject[ing] its goods into the forum state" or engaging in "efforts to exploit a national market that necessarily include Pennsylvania are insufficient" to satisfy personal jurisdiction. *Id.* (internal quotations omitted). Instead, "what is necessary is a deliberate targeting of the forum," such as an effort "to sell products . . . in Pennsylvania specifically." *Id.* (internal quotations omitted). Physical entry into the forum, however, is not required; for example, "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *O'Connor*, 496 F.3d at 317-18 (internal quotations omitted) (holding a vacation company purposefully contacted Pennsylvania by mailing brochures and calling Pennsylvania residents).

In determining whether the cause of action arises out of or relates to the defendant's conduct in the forum state, "the Supreme Court has not yet explained the scope of this requirement." *Id.* at 318. The Third Circuit has also declined to adopt a formal test for assessing this element, instead stating "courts must decide each case individually." *Id.* at 320. Nonetheless, the Third Circuit has created two prerequisites before a court may find in favor of a plaintiff. First, the cause of action must not have arose "but-for" the contact at issue in the forum state. *Id.* at 322. Second, the plaintiff's theory "must hew closely to the reciprocity principle,"

showing that the defendant enjoyed some benefits from the forum so that it is fair to convey the burden of being subject to the forum's courts. *Id.* at 323; *accord Phillips*, 741 F. App'x at 99.

After the plaintiff carries its burden on the first two elements, "a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction comports with fair play and substantial justice." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (internal quotations and brackets omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The defendant bears the burden of proof on this final element and can only "defeat jurisdiction based on this fairness inquiry" if they "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotations omitted). In assessing this element, courts "may consider the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (internal quotations omitted).

### III. Discussion

#### A. The court will grant Plaintiff limited jurisdictional discovery.

Plaintiff advances three theories in support of the court's personal jurisdiction. First, Plaintiff "suspects" there may be sufficient facts that "could support general jurisdiction in the Middle District of Pennsylvania." (Doc. 12 at p. 16.) But a "suspicion" is a belief "based only on inconclusive or slight evidence, or possibly even no evidence." BLACK'S LAW DICTIONARY 1748 (11th ed. 2019). It does not rise to the level of an allegation or evidentiary basis. *See* FED. R. CIV. P. 11(b) (allegations in pleadings require a good-faith basis in law or fact that an accusation may be true upon further research). Without an evidentiary basis or allegation supporting its general jurisdiction theory, the court will not grant jurisdictional discovery.

Second, Plaintiff argues that the court may assert specific personal jurisdiction over Defendant due to it selling infringing products in Pennsylvania through Amazon. "When analyzing [i]nternet commerce cases, 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportional to the nature and quality of commercial activity that an entity conducts over the [i]nternet.'" *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). For example, the use of a website to solicit appointments and generally provide

information to consumers does not constitute sufficient contact. *See id.* at 212. But if the website "permit[s] customers to place orders, make payments, or engage in any business transactions," it may be sufficiently commercial to constitute intentional contact with the forum state. *Id.*[3] Once the plaintiff demonstrates the defendant's website use is sufficiently commercial, they must still show "that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). "In deciding whether to exercise jurisdiction over a cause of action arising from a defendant's operation of a web site, a court may consider the defendant's related non-[i]nternet activities as part of the 'purposeful availment' calculus." *Id.*

An Eastern District of New York case applying *Zippo* held that, when a seller uses an online sale platform—such as Amazon or eBay—to peddle products, jurisdiction may be proper, depending on whether the use was an isolated sale or

---

[3] The court notes that technological progress may render the at-the-time insightful "interactivity of the website" approach a bit archaic. *See* Niloufer Selvadurai, *The Proper Basis for Exercising Jurisdiction in Internet Disputes: Strengthening State Boundaries of Moving Toward Unification?*, 13 U. Pitt. J. Tech. L. & Pol'y 1, 9 (2013) ("Since the formulation of the test 15 years ago, the level of interactivity of commercial websites has significantly evolved to the extent that the vast majority of commercial websites are now interactive in nature and offer online purchase or contact processes. In such a context, the interactivity of the website approach, which seeks to classify websites based on passivity or activity, is no longer a fine-grain approach to determining the nuances of the nature and extent of a website's connection to the jurisdiction in question.").

part of a consistent operation of a commercial business. *See EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458, 2012 WL 2001443, at \*3 (E.D.N.Y. June 4, 2012); *see also Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15-Civ.-8459, 2016 WL 3748480, at \*3 (S.D.N.Y. July 8, 2016) (company "selling infringing garments on the Amazon platform" was properly subject to jurisdiction). Those two New York cases, however, relied on the idea that using Amazon to effectuate "sales [that] are nationwide and include New York" satisfied the intentional contact standard. *Lifeguard Licensing Corp.*, 2016 WL 3748480 at \*3. But the Third Circuit has consistently rejected this logic. *See Shuker*, 885 F.3d at 780 ("[N]ationally directed efforts are all that the Shukers alleged here . . . We therefore agree with the District Court's decision to reject the Shukers' arguments regarding specific personal jurisdiction."); *see also Guidecraft, Inc. v. OJCommerce, LLC*, No. 2:18-cv-01247, 2019 WL 2373440, at \*5 (W.D. Pa. May 20, 2019), *report and recommendation adopted*, 2019 WL 2371645 (W.D. Pa. June 5, 2019) (implicitly finding *EnviroCare* clashes with "the definition of 'purposeful availment' as interpreted by the Third Circuit").[4]

---

[4] One District of New Jersey decision found "the reasoning in *Envirocare* persuasive," and held the sale of products directly to New Jersey through Amazon constituted intentional contact with the forum state. *Telebrands Corp. v. Mopnado*, No. 2:14-cv-07969, 2016 WL 368166, at \*6-7 (D.N.J. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 355072 (D.N.J. Jan. 28, 2016). That case, however, pre-dates the Third Circuit's decision in *Shuker*, and it does not discuss the *Toys "R" Us* decision.

Here, Defendant has introduced a declaration in support of its motion. The court thus looks to the evidence to determine the viability of Plaintiff's internet theory, as opposed to basing its decision solely on Plaintiff's allegations. Wright & Miller, *supra*, § 1067.6. Based on the record before it, the court finds Defendant does not merely post information or solicit appointments through a website, but instead actively sells products to Pennsylvania residents through Amazon. Its web sales thus qualify as active commercial usage under *Zippo*. Plaintiff must therefore show that Defendant intentionally contacts Pennsylvania with its Amazon usage, as opposed to just incidentally contacting Pennsylvania as part of nation-wide sales. In support of its motion to dismiss, Defendant has introduced a declaration claiming it has not intentionally contacted Pennsylvania. But a substantial portion of Plaintiff's case is based upon its accusation that Defendant dishonestly represented its sale of products through Amazon, including in Pennsylvania. This is not enough to create a genuine factual dispute, but it is enough to warrant jurisdictional discovery, particularly in light of the fact that Defendant is a corporation.

Third, Plaintiff's final theory is that this dispute arises from the breakdown of a business deal that took place substantially in Pennsylvania. The facts Plaintiff puts forward here are ample to demonstrate Defendant intentionally contacted Pennsylvania. For example, Defendant made several phone calls and emails with Pennsylvania residents and had documents and products mailed to and from

12

Pennsylvania. The complexity emerges from whether the cause of action truly arises from these contacts or not.

Plaintiff asserts, in paragraph twenty-five of her declaration, that absent her terminating their agreement: "I do not *believe* Universal would have created Universal's Scissors by copying my unique product trade dress and packaging." (Doc. 12-1, ¶ 25 (emphasis supplied).)[5] Defendant responds by arguing this paragraph is pure conjecture. (Doc. 13, p. 8.) Defendant is correct on this front. "Statements in affidavits made only on belief" do not constitute personal knowledge and thus "may not be considered." *United States v. Rocky Mountain Holdings, Inc.*, 782 F. Supp. 2d 106, 114 (E.D. Pa. 2011) (internal quotations omitted); *accord Olivares v. United States*, 447 F. App'x 347, 352 n.6 (3d Cir. 2011). The court thus will disregard Plaintiff's conclusive statement that the termination of the prior agreement gave rise to Defendant infringing on her products. Even absent this paragraph, however, Plaintiff has nonetheless presented sufficient circumstantial evidence from which the court can infer a colorable basis for her belief, so the court will not wholesale dismiss this argument.

---

[5] Defendant argues that "[n]o evidence exists of an agreement" between itself and Plaintiff. (Doc. 13, p. 8.) This argument, however, is either unartfully phrased or borderline frivolous. While the parties may dispute the scope of the agreement between them, there is ample evidence in the record demonstrating an agreement of some sort existed between the parties.

Defendant further complains Plaintiff has not brought a breach of contract claim, so her tort claims cannot arise from this prior agreement. (Doc. 13, p. 5.) But, under Third Circuit case law, a tort action may arise out of or relate to a prior contractual relationship. *See* Ryne H. Balloui, *Civil Procedure—Be More Specific: Vague Precedents and the Differing Standards by Which to Apply "Arises Out of or Related To" In the Test for Specific Personal Jurisdiction*, 35 U. Ark. Little Rock L. Rev. 663, 674-76 (2013) ("Even though O'Connor's claim arose in tort, not contract, the court's analysis did not require substantive relevance between the claim and Sandy Lane's forum contacts; therefore, the contract provided 'a meaningful link between a legal obligation that arose in the forum and the substance of' O'Connor's claim.") (quoting *O'Connor*, 496 F.3d at 323-24).[6]

Hence, Plaintiff's specific personal jurisdiction theories are not frivolous but require additional evidence to flesh out their viability. As such, the court will grant Plaintiff limited jurisdictional discovery.

---

[6] Defendant also attaches eight new exhibits to its reply brief. It is generally inappropriate to introduce new evidence and arguments on reply, as it denies the opposing party an opportunity to rebut them. Moreover, Defendant has introduced no basis for authenticating the documents, as required by Federal Rule of Evidence 901. But Plaintiff has raised no objection to them, so the court may consider them. *See Archer v. York City Sch. Dist.*, 710 F. App'x 94, 101 (3d Cir. 2017) (holding plaintiff waived objection to new evidence in reply brief by failing to move to strike); *United States v. Ntreh*, 142 F. App'x 106, 108 n.4 (3d Cir. 2005) (finding court did not err in admitting inauthenticated documents where "no objection on this ground was stated at trial"). Nonetheless, the court finds these documents do little other than show more pictures of the scissors they are selling and Defendant's corporate address. They do not demonstrate Plaintiff's personal jurisdiction theory is frivolous.

In granting limited jurisdictional discovery, the court must balance each parties' rights. The adversarial process empowers the parties to inspect and test the validity of each other's evidence, granting each "the right to depose the other's affiants and to inspect the documentary evidence." *Moroccanoil, Inc. v. Conforti*, No. 11-cv-0136, 2016 WL 1261210, at *2 (D.N.J. Mar. 30, 2016). The court, however, must "avoid imposing undue burdens on a party who may not even be subject to the court's power." S.I. Strong, *Jurisdictional Discovery in United States Federal Courts*, 67 Wash. & Lee L. Rev. 489, 492 (2010); *accord Belden Techs., Inc. v. L.S. Corp.*, 626 F. Supp. 2d 448, 459 (D. Del. 2009) ("[L]imited jurisdictional discovery based upon plaintiff's specific allegations and competent evidence is not authorizing a fishing expedition.") (internal quotations omitted).

In light of these considerations, the court will grant Plaintiff sixty days to submit up to fifteen interrogatories, requests for production, and requests for admission to Defendant, solely regarding facts that may support Plaintiff's personal jurisdiction theory, including: whether the current scissor or packaging design was actually based on any scissors Plaintiff sent to Defendant as part of the previous agreement; whether any internal discussions reveal termination of the earlier contract actually precipitated Defendant's decision to sell similar scissors; and whether Defendant has taken any efforts to target Pennsylvania citizens in the sale of its scissors. Plaintiff may also depose Defendant's affiants for up to two hours.

Some of these facts overlap with the merits of the case. But this is not an opportunity for Plaintiff to conduct broad discovery regarding its allegations against Defendant.

### B. The court will postpone resolution of the motion to transfer until after resolving the personal jurisdiction and venue issues.

*Forum non conveniens* is a doctrine empowering a court that has legal jurisdiction over a dispute to dismiss a case when "the chosen forum would either oppress a defendant out of all proportion to plaintiff's convenience or cause the court administrative and legal problems." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 439 (3d Cir. 2017) (internal quotations omitted). "28 U.S.C. § 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 60 (2013). "§ 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard." *Id.* The court must decide the issue by considering multiple factors, including "access to proof, availability of process," "burdens on the courts and local juries," "and other practical issues." *Trotter*, 873 F.3d at 439. "The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

Here, the court must first decide whether it has legal jurisdiction over the case, and whether it is the proper venue to resolve the dispute, before deciding whether it

16

should relinquish that authority to another jurisdiction. Moreover, jurisdictional discovery will put a different set of facts in front of the court. The court will thus postpone resolving the *forum non conveniens* dispute until after it determines whether it has jurisdiction over the parties. *Cf. Acuna-Atalaya v. Newmont Mining Corp.*, 765 F. App'x 811, 813 (3d Cir. 2019) ("[W]here a district court dismisses a complaint on *forum non conveniens* founds, and [] changed circumstances materially affect the district court's prior assessment . . . it is often 'prudent to vacate the district court's dismissal order and remand, so that the district court can consider the implications' of these changes.") (quoting *Bank of Credit & Comm. Int'l (Oveseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 247 (2d Cir. 2001)).

## IV. Conclusion

For the reasons outlined above, the court will deny the motion without prejudice, permitting Plaintiff limited jurisdictional discovery, after which the parties may, if they so choose, re-raise these issues with the court. An appropriate order shall follow.

>*/s/ Sylvia H. Rambo*
>SYLVIA H. RAMBO
>United States District Judge

Dated: October 17, 2019

17