IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN KAY BUCKLEY,** | : | **Civil No. 1:19-CV-794** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSAL SEWING SUPPLY, INC.,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and to Dismiss Plaintiff's Complaint and/or Motion to Transfer Venue under 28 U.S.C. § 1404.  (Doc. 38.)  For the reasons outlined below, the court will deny the motion.

## I.  BACKGROUND[1]

This is a copyright infringement dispute.  Plaintiff Karen Kay Buckley ("Plaintiff") is a quilt designer who designed multiple different types of quilting scissors.  In December of 2016, Plaintiff began negotiating, by email and phone, a distributor deal with Universal, whereby it would purchase and re-sell Plaintiff's scissors while promising, among other things, not to sell the scissors through

---

[1]     The court assumes, for the sake of this motion, that Plaintiff's general allegations are true. Regarding whether any of this alleged conduct actually took place in the Middle District of Pennsylvania, however, the court basis its facts exclusively upon the evidence in the record, making all reasonable inferences in favor of Plaintiff.

Amazon.  On March 30, 2017, Defendant issued a purchase order requesting 7,920 pairs of scissors for a price of $64,407.60.  In response, Plaintiff accepted the purchase order and shipped the requested products from Pennsylvania to Missouri on April 11, 2017.  The email exchange between the parties, as well as the receipt of the transaction, indicate to any reasonable person reading them that Plaintiff is located in Carlisle, Pennsylvania and would be shipping scissors directly from Carlisle.  On August 24, 2017, Universal issued an additional purchase order that Plaintiff again filled by shipping the scissors from Pennsylvania.  Universal paid for these purchases by mailing checks to Plaintiff at her Pennsylvania address.

At some point in 2017, Plaintiff began receiving complaints from other distributors that a competitor was selling her scissors on Amazon for cheaper prices. Plaintiff came to believe that Defendant was to blame, and she therefore informed Defendant that it had breached their agreement and that she would no longer sell scissors to the company.  Defendant never responded.

According to the complaint, Defendant then began selling a set of copycat scissors with virtually identical packaging, design, and advertising, thereby encroaching on Plaintiff's intellectual property rights.  On May 9, 2019, Plaintiff sued Defendant for copyright infringement and Lanham Act violations, alleging trade dress infringement and unfair competition.  (Doc. 1.)

On July 9, 2019, Defendant moved to dismiss the case for lack of personal jurisdiction and improper venue; or, alternatively, to transfer the case to the Eastern District of Missouri.  (Docs. 9-10.)  The court denied that motion without prejudice, ordering the parties to engage in jurisdictional discovery.  (*See* Docs. 20-21.)  The parties exchanged jurisdictional discovery and held a deposition of Defendant's CEO, Philip Samuels.  The court has reviewed the parties' briefing, the documentary evidence submitted by the parties, and the transcript of Mr. Samuels's deposition. The motion is thus ripe for review.

## II.   DISCUSSION

### a.  The Court Has Specific Personal Jurisdiction Over Defendant.

In reviewing a 12(b)(2) motion to dismiss for lack of personal jurisdiction, based exclusively on the pleadings, the court must take as true the facts alleged by the plaintiff.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). "[T]he plaintiffs need only establish a prima facie case of personal jurisdiction." *Id.* (internal quotations and brackets omitted).   "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

"When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint."  4A Charles Alan Wright & Arthur R. Miller, *Procedural Aspects of Personal Jurisdiction*, Fed. Prac. & Proc. § 1067.6 (4th ed. 2019) ("Wright & Miller").  Instead, the plaintiff must carry its burden by presenting admissible evidence.  *Estate of Thompson v. Phillips*, 741 F. App'x 94, 96 (3d Cir. 2018).  The court may evaluate the motion on the papers and documentary evidence alone, in which case the plaintiff "need only establish a prima facie case of personal jurisdiction and they are entitled to have . . . all factual disputes drawn in their favor."  *Id.* (internal quotations and brackets omitted); *see Metcalfe*, 566 F.3d at 331 (reversing district court for failing to construe disputed facts in the plaintiff's favor).  The plaintiff carries this "prima facie" burden if the evidence makes its personal jurisdiction theory "seem[] to be true on first examination, even though it may later be proved to be untrue."  BLACK'S LAW DICTIONARY 1441 (11th ed. 2019).  But the plaintiff ultimately bears the burden of proving "by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).  Thus, "[i]f the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *accord Metcalfe*,

566 F.3d at 336 (explaining the personal jurisdiction process similarly). The choice of how the court resolves a factual dispute is ultimately a "discretionary" one. Wright & Miller, *supra*, at § 1067.6.

"A District Court typically exercises personal jurisdiction according to the law of the state where it sits, in this case Pennsylvania." *Cruickshank-Wallace v. CNA Fin. Corp.*, 769 F. App'x 77, 79 (3d Cir. 2019) (citing FED. R. CIV. P. 4(k)(1)(A)). Pennsylvania's long-arm statute establishes a scope of personal jurisdiction co-extensive with constitutional boundaries. *See id.* at 79 (citing 42 Pa. C.S.A. § 5322(b)).

The due process clause of the United States Constitution permits the exercise of two types of personal jurisdiction: specific and general. *O'Connor*, 496 F.3d at 317. "For a corporation, general jurisdiction is the state(s) where the corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.'" *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 463 (M.D. Pa. 2019) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)) (internal brackets omitted). "[A] court with general jurisdiction may hear *any* claim against that defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of Ca., S.F. Cty.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original).

The Third Circuit has laid out a three-part test for determining whether the court has specific jurisdiction. "First, the defendant must have purposefully directed

its activities at the forum." *O'Connor*, 496 F.3d at 317 (internal citations, quotations, and brackets omitted). "Second, the litigation must arise out of or relate to at least one of those activities." *Id.* "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Id.* While no majority opinion of the United States Supreme Court has resolved whether the stream-of-commerce theory of personal jurisdiction is valid, the Third Circuit has rejected it. *See Shuker*, 885 F.3d at 780 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011); *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 108-13 (1987) ("*Asahi*")). Thus, in the Third Circuit, a vendor indirectly "inject[ing] its goods into the forum state" or engaging in "efforts to exploit a national market that necessarily include Pennsylvania" is not subject to personal jurisdiction. *Id.* (internal quotations omitted). Instead, generally, "what is necessary is a deliberate targeting of the forum," such as an effort "to sell products . . . in Pennsylvania specifically." *Id.* (internal quotations omitted). Physical entry into the forum, however, is not required; for example, "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *O'Connor*, 496 F.3d at 317-18 (internal quotations omitted) (holding a vacation company purposefully contacted Pennsylvania by mailing brochures and calling Pennsylvania residents).

Here, the record demonstrates that Defendant has engaged in two different types of intentional contact with the Middle District of Pennsylvania. First, Defendant initiated a commercial transaction with a Pennsylvania seller by reaching out to her unilaterally, by telephone, and purchasing scissors from her. It contacted a seller in Carlisle, Pennsylvania, requested she mail scissors from Carlisle, and paid tens of thousands of dollars to her business in Carlisle. Defendant argues that this does not constitute intentional contact with the forum because Mr. Samuels did not know he was purchasing scissors from the state of Pennsylvania. This argument is weak, given the emails and purchase orders would have revealed to any reasonable purchaser that the scissors were being shipped from Carlisle, Pennsylvania. Even if Defendant's claim is true, however, it is irrelevant because Mr. Phillips is not a named defendant in this lawsuit; his company is. Moreover, the parties' emails demonstrate that a separate person working for Defendant was the agent responsible for handling the purchases, and her knowledge is imputed to the company itself. *Reichard v. United of Omaha Life Ins. Co.*, 331 F. Supp. 471, 472 (E.D. Pa. 2018) (holding the knowledge a company's agent is imputable to the company if the knowledge is directly related to part of the agent's principle duties).

The second type of intentional contact with the forum is Defendant's sale of scissors to several vendors located in the Middle District of Pennsylvania. Defendants have produced a long list of vendors in Pennsylvania that it sells

thousands of dollars in products to.  Mr. Samuels admitted in his deposition that this

would include the sale of scissors.  Defendant has made no colorable argument

rebutting this contact with the forum.  Hence, Plaintiff has shown, by a

preponderance of the evidence, that Defendant engaged in intentional contact with

the forum.

Having satisfied the intentional contact requirement, Plaintiff must show that

her causes of action arise out of or relate to that conduct.  The "Supreme Court has

not yet explained the scope of this requirement."  *O'Connor*, 496 F.3d at 318.  The

Third Circuit has also declined to adopt a formal test for assessing this element,

instead stating "courts must decide each case individually."  *Id.* at 320.  Nonetheless,

the Third Circuit has issued a recent opinion[2] clarifying the appropriate principles

the court must apply:

> For contract claims, a plaintiff must satisfy a restrictive
> standard by showing proximate causation (also called
> substantial relevance.) . . . For tort claims, the standard is
> less restrictive.  But tort claims still require a closer and
> more direct causal connection than but-for causation.  The
> defendant must have benefited enough from the forum
> state's laws to make the burden of facing litigation there
> proportional to those benefits.  Plus, intentional torts
> require more: The defendant must have expressly aimed
> its tortious conduct at the forum to make the forum the
> focal point of the tortious activity.  And the plaintiff must
> have felt the brunt of the harm in the forum.

---

[2]      Judge Bibas wrote a very thorough, lucid, and helpful opinion in this gray and difficult-to-navigate area of the law.

*Danziger v. De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) (internal citations, quotations, and brackets omitted).  "Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Goodwin*, 499 F.3d 290, 296 (3d Cir. 2007).

Here, Plaintiff has only brought tort-based causes of action, but neither party has briefed whether those claims require proof of intent.  Thus, the court must begin its analysis by segmenting each of Plaintiff's claims into intentional and unintentional torts.

Plaintiff's first two pleaded claims are a collection of general intellectual property violations under federal statutory and common law authority, including Lanham Act, copyright infringement, and trade dress infringement claims.  (*See* Doc. 36, pp. 1-2, 28-30.)  "The basic policy behind the Lanham Act is to protect customers against the likelihood of confusion.  Given this policy, the determination of liability focuses on the objective factor of likely customer confusion and not on the subjective mental state of the infringer."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:124 (5th ed., 2020) (internal ellipses omitted) (quoting *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256 n. 16 (9th Cir. 1982)).  This general principle extends to all unfair competition claims.  *See Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1258-59 (5th Cir. 1989)

("[The] Lanham Act and the law of unfair competition do not exist to punish evil motives."); *Gordon v. Pearson Ed., Inc.*, 85 F. Supp. 3d 813, 820 (E.D. Pa. 2015) (holding intent is unnecessary for copyright infringement); *Cincinnati Ins. Cos. v. Pestco, Inc.*, 374 F. Supp. 2d 451, 460 (W.D. Pa. 2004) (holding intent is unnecessary for trade dress infringement). Thus, Plaintiff's first two claims are unintentional torts. Plaintiff's third claim is a state law claim with the same elements as the first two federal claims, *see Scott Fetzer Co. v. Gehring*, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003), rendering it an unintentional tort as well.

Plaintiff's fourth claim is a Pennsylvania statutory claim for misappropriation of the right of publicity. Under 42 Pa.C.S. § 8316(a):

> Any natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person or the written consent of any of the parties authorized in subsection (b) may bring an action to enjoin such unauthorized use and to recover damages for any loss or injuries sustained by such use.

Based on the plain language of the statute, the only necessary elements in this claim are: (1) the plaintiff must be a natural person; (2) their name or likeness must have commercial value; (3) another person must have used their name or likeness for a commercial or advertising purpose; and (4) that other person must have lacked proper authorization to use the name or likeness in the manner it was used. Malicious intent by the user is not necessary.

Turning to Pennsylvania authority, no state appellate decision has explained the elements of this statutory claim.  One Pennsylvania Court of Common Pleas decision, however, held that a § 8316 claim is a "Pennsylvania corollary" to the "Lanham Act."  *Majorsky v. Douglas*, No. G.D. 08-674, 2011 WL 9527185, at *9 (Pa. Ct.C.P. Aug. 15, 2011).  Because intent is not a necessary element for a Lanham Act claim, this further supports the court's reading that a Pennsylvania misappropriation claim is not an intentional tort.

Plaintiff's fifth and final claim is a Pennsylvania common law misappropriation claim.  The Pennsylvania Supreme Court has never formally recognized this claim, but multiple federal district courts have cited a well-reasoned Pennsylvania Court of Common Pleas decision as establishing Pennsylvania's recognition of the doctrine.  *See Rose v. Triple Crown Nutrition, Inc.*, No. 4:07-CV-56, 2007 WL 707348, at *2 (M.D. Pa. Mar. 2, 2007) (citing *Hogan v. A.S. Barnes & Co.*, 114 U.S.P.Q. 314, 1957 WL 7316 (Pa. Ct.C.P. 1957)).  *Hogan* stated that a common law misappropriation of the right of publicity claim is "but another way of applying the doctrine of unfair competition," with the "right of publicity" simply being a specific type of enforceable property right that the plaintiff is trying to protect.  1957 WL 7316 at *10.  Treating this doctrine as another unfair competition claim suggests it also does not require proof of malicious intent.  *See, e.g., Rose*, 2007 WL 707348 at *3 (citing *World Wrestling Fed'n Entm't Inc. v. Big Dog*

*Holdings, Inc.*, 280 F. Supp. 2d 413, 443-44 (W.D. Pa. 2003)) (listing the elements for Pennsylvania's common law misappropriation claim and not including intent).

Hence, all five of Plaintiff's claims are unintentional torts, rendering them subject to the relaxed standard outlined in *Danziger*. Plaintiff will therefore satisfy her burden of proof if she shows, by a preponderance of the evidence, that: (1) Defendant's intentional contact with Pennsylvania was a but-for cause of her claim arising; and (2) the amount Defendant benefitted from its activity in Pennsylvania is proportional to the burden it would face in litigating here. *Danziger*, 948 F.3d at 130. Plaintiff need not show that her claims were proximately caused by Defendant's intentional conduct here, nor does she need to show that Defendant "expressly aimed its tortious conduct at the forum to make the forum the focal point of the tortious activity." *Danziger*, 948 F.3d at 130.

Here, Plaintiff has shown that both categories of Defendant's contact with the forum are but-for causes of her causes of action. Plaintiff has shown that it is at least more likely than not that the business transaction between Plaintiff and Defendant, whereby Defendant purchased and re-sold a substantial number of her scissors, was a pre-requisite to Defendant producing replicas of her scissors. The record shows Defendant sent a copy of Plaintiff's scissors to a Chinese manufacturer so they could be replicated and sold. The record shows Defendant likely used a pair of scissors it purchased from Plaintiff to imitate them, or, alternatively, it found the sale of

Plaintiff's scissors quite successful, motivating it to replicate them.  Moreover, even if Defendant independently purchased Plaintiff's scissors through Amazon rather than a direct transaction with Plaintiff, Defendant nonetheless has sold scissors directly in the forum, and those sales give rise, at least in part, to Plaintiff's causes of action.[3]   While Defendant may also sell scissors outside of the state of Pennsylvania, which may also harm Plaintiff, Plaintiff need not show that Defendant's *tortious* conduct was expressly aimed at the forum state, only that Defendant engaged in some conduct in the forum state that gave rise to a claim.  *Id.*

Defendant also enjoyed benefits under Pennsylvania law that are proportional to the burden of compelling it to litigate here.  "With each purposeful contact by an out-of-state resident, the forum's state laws will extend certain benefits and impose certain obligations.  Specific jurisdiction is the cost of enjoying the benefits."  *O'Connor*, 496 F.3d at 323 (internal citations omitted).  In *Antonini v. Ford Motor Company*, this court exercised personal jurisdiction over Ford by finding it "benefited from the laws of Pennsylvania by using the state as a platform to increase the number of Pennsylvanians purchasing and driving Ford brand vehicles."  Case No. 3:16-CV-2021, 2017 WL 3633287, at *4 (M.D. Pa. Aug. 23, 2017) (Mariani,

---

[3]      Did Defendant genuinely produce a replica that constitutes an intellectual property violation?  The court takes no position on that issue because it "goes to the merits of the case rather than to the question of personal jurisdiction."  *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 372 n.4 (3d Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481-82 (1985)).

J.).   Similarly, Defendant here directly sells thousands of dollars of scissors to Pennsylvania stores—which may be copies of Plaintiff's scissors—in addition to having spent tens of thousands of dollars directly purchasing scissors from Pennsylvania through Plaintiff.  Hence, Defendant "benefited from Pennsylvania's laws that regulate and facilitate commercial activity."  *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (internal quotations and brackets omitted).

Accordingly, Plaintiff has carried her burden of proving that Defendant has engaged in, and continues to engage in, intentional conduct with the forum state and that her causes of action arise out of or are related to this conduct.  Because the level of evidence Plaintiff has presented appears to go beyond the standard prima facie showing, reaching the level of a preponderance of the evidence, the court finds that an evidentiary hearing on the matter is unnecessary.

After the plaintiff carries its burden on the first two elements, "a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction comports with fair play and substantial justice." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (internal quotations and brackets omitted) (citing *Burger King*, 471 U.S. at 472).  The defendant bears the burden of proof on this final element and can only "defeat jurisdiction based on this fairness inquiry" if it can "present a compelling case that the presence of some other considerations

would render jurisdiction unreasonable." *Id.* (internal quotations omitted).   In assessing this element, courts "may consider the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (internal quotations omitted).

"The existence of minimum contacts creates a presumption that jurisdiction is constitutional." *Phillips*, 741 F. App'x at 99 (citing *Burger King*, 471 U.S. at 476). "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* (quoting *Asahi*, 480 U.S. at 114).  Similar to the issue of proportionality, the particular "facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 486 (internal quotations and brackets omitted).  This is because "the quality and nature of an interstate transaction may sometimes be so random, fortuitous, or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction." *Id.* (internal quotations omitted).

Here, Defendant's conduct has intentionally contacted this forum, giving rise to a presumption that it should reasonably anticipate having to litigate here.  In

reviewing the record, the court also finds Defendant has failed to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477; *accord Pennzoil Prods. Co.*, 149 F.3d at 207 ("This present case is not one of those rare cases described by Justice Brennan."). First and foremost, the fact that there are three states in between Harrisburg and St. Louis demonstrates that "[t]his is not a case where a severe burden is placed on an alien defendant as in *Asahi Metal*." *Pennzoil Prods. Co.*, 149 F.3d at 208 (internal brackets and quotations omitted) (citing *Asahi*, 480 U.S. 102); *accord O'Connor*, 496 F.3d at 324 (explaining that there are "unique burdens placed upon one who must defend oneself in a foreign legal system") (quoting *Asahi*, 480 U.S. at 114). As the Third Circuit pointed out in 2018, "*Asahi* is the only Supreme Court case ever to present a burden high enough on the defendants that jurisdiction was not constitutional despite minimum contacts.  It involved a suit in California between parties from Japan and Taiwan." *Phillips*, 741 F. App'x at 99 n. 33. While Defendant may have twenty witnesses with relevant knowledge in this case, they can all be deposed electronically, particularly in the age of COVID-19, and should this case proceed to trial, it is highly likely that testimony by several of the witnesses would simply be duplicative of one another, rendering it unnecessary for Plaintiff to call all of them.  Plus, the ones who need appear can take a short flight or even potentially drive together to Harrisburg.  Document discovery can also be done entirely

electronically. Thus, the court does not find Defendant's burden near oppressive enough to justify refusing to exercise jurisdiction over it.

"Nor does this case involve one isolated occurrence where the defendant had no connection with the forum state." *Pennzoil Prods. Co.*, 149 F.3d at 207 (internal quotations omitted). Instead, Defendant initiated a commercial transaction with a Pennsylvania seller by reaching out to her unilaterally, spent tens of thousands of dollars purchasing scissors from her, and continues to sell scissors in Pennsylvania. This distinguishes Defendant from a commercial seller of goods whose products randomly and unforeseeably end up in a foreign state. *See Burger King*, 471 U.S. at 486 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Pennsylvania also "has an interest in providing effective means of redress when foreign corporations reach into the state and transact business with its citizens," like the case at bar. *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 188 (3d Cir. 2011) (internal quotations omitted) (citing *O'Connor*, 496 F.3d at 323). Hence, Pennsylvania "is a reasonable forum in this case, and due process demands no more." *Id.*[4]

      b. <u>Defendant Has Failed to Prove that the Overall Efficiency and Burdens of This Case Justify Transferring it to the Eastern District of Missouri.</u>

---

[4]     In finding the court has specific personal jurisdiction over Defendant, the court need not analyze general jurisdiction. Also, the parties have agreed that this court is a proper venue if it has personal jurisdiction. Therefore, for the sake of this motion, the court's finding that it has personal jurisdiction over Defendant also demonstrates it is a proper venue.

Under 28 U.S.C. § 1404(a) "a district court may transfer any civil action to any other district or division where it might have been brought" for convenience of the parties and witnesses and in the interest of justice.  "The burden of establishing the need for transfer still rests with the movant . . . [a]nd, in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations omitted); *accord In re McGraw-Hill Global Ed. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). "While there is no definitive formula or list of the factors to be considered, courts have considered many variants of the private and public interests protected by the language of § 1404(a)."  *Jumara*, 55 F.3d at 879 (internal citations omitted).

Here, Defendant has failed to show any factors weigh in its favor.  Defendant relies almost exclusively on the argument that some evidence and witnesses are in St. Louis.[5]  While "the location of books and records" is relevant for the court to consider, these factors are only relevant "to the extent that the files could not be produced in the alternative forum."  *Id.*  Defendant has failed to identify any discoverable evidence that could not simply be transferred digitally.  As such, this factor does not weigh against this forum.  Regarding witnesses, "the convenience of

---

[5]     Defendant makes other arguments concerning the relevant factors, but they are not supported by evidence, not explained thoroughly, and are, in essence, other forms of the same argument that witnesses and evidence are present in St. Louis.

the witnesses" is also only relevant "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Id.* Defendant has presented no evidence showing that any potential witnesses may be unavailable for trial in the Middle District of Pennsylvania. Thus, both of these arguments fail.

Defendant also relies on *Steelcase, Incorporated v. Mar-Mol Company*, 210 F. Supp. 2d 920 (W.D. Mich. 2002). That case, however, involved a plaintiff in Michigan suing defendants who resided in Puerto Rico, Venezuela, and the Dominican Republic—locations much further from each other than Missouri and Pennsylvania. *See id.* at 922. Further, the court in *Steelcase* explained that it did not consider the burden on any "employee-witnesses"—the only witnesses Defendant complains about here. *Id.* at 940. Finally, the *Steelcase* court also held that documents being located in Puerto Rico was irrelevant because the defendant had failed to put forward any evidence showing the transfer of documents to Michigan would be difficult or burdensome. *See id.* at 940-41. *Steelcase* therefore does not support Defendant's position. With no evidence, arguments, or authority in its favor, Defendant's request to transfer the case to the Eastern District of Missouri is meritless.

## III.   CONCLUSION

For the reasons outlined above, the court will deny Defendant's motion to dismiss the complaint or transfer this case.  An appropriate order will follow.

/s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: December 9, 2020